**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

IN RE:

APPLICATION OF INTERNATIONAL MINERAL
RESOURCES B.V. FOR AN ORDER TO TAKE
DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Case No. _____

Applicant.

**MEMORANDUM OF LAW IN SUPPORT OF INTERNATIONAL MINERAL**
**RESOURCES B.V.'S APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782 TO**
**TAKE DISCOVERY FROM SCOTT HORTON**

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
tel. +1 212 488 1200
fax. +1 212 488 1220

*Attorneys for Applicant International*
*Mineral Resources B.V.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND .....................................................................................3

I.     SCOTT HORTON ............................................................................................3

II.    IMR, SHAFT SINKERS AND ECVK, AND THE VARIOUS FOREIGN
LEGAL PROCEEDINGS BETWEEN THEM ................................................3

III.   IMR LEARNS THAT ITS COMPUTERS HAVE BEEN HACKED AND THAT
IT IS THE VICTIM OF A SMEAR CAMPAIGN BEING WAGED BY RINAT
AKHMETSHIN ..............................................................................................5

IV.   SECTION 1782 DISCOVERY TAKEN FROM MR. AKHMETSHIN FURTHER
INDICATES THAT MR. AKHMETSHIN WAS RESPONSIBLE FOR THE
HACKING AND REVEALS MR. HORTON'S KNOWLEDGE OF THE
SCHEME .........................................................................................................8

V.    IMR SEEKS DISCOVERY FOR USE IN THE DUTCH APPEAL AND A
CONTEMPLATED ACTION IN THE NETHERLANDS .............................12

ARGUMENT .............................................................................................................14

I.     IMR'S APPLICATION SATISFIES THE THREE STATUTORY
REQUIREMENTS OF 28 U.S.C. § 1782 .....................................................14

II.    THE COURT SHOULD GRANT IMR'S SECTION 1782 PETITION UNDER
THE FOUR DISCRETIONARY FACTORS IN *INTEL* ...................................17

       A.     Mr. Horton Is Not a Participant in the Dutch Action............................17

       B.     The Dutch Court Would Be Receptive to the Requested Discovery, and
the Character of the Dutch Proceedings Favors Granting the Application............18

       C.     IMR Is Not Circumventing Any Dutch Proof-Gathering Restrictions .................19

       D.     IMR's Discovery Requests Are Narrowly Tailored and Are Not "Unduly
Intrusive or Burdensome".......................................................................20

CONCLUSION...........................................................................................................21

**Cases**                                                                                                                      **Page(s)**

*Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*,
    No. 11-12897, 2014 WL 104132 (11th Cir. Jan. 10, 2014) ........................................................ 16

*Application of Esses*, 101 F.3d 873 (2d Cir. 1996)................................................................. 17, 20

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012) ............. 14, 16, 17

*Eco Swiss China Time Ltd. v. Timex Corp.*, 944 F. Supp. 134 (D. Conn. 1996) ..................... 19

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77
    (2d Cir. 1997)..................................................................................................................... 17

*In re Application of Chevron Corp.*, 709 F. Supp. 2d 283 (S.D.N.Y. 2010) ............................... 18

*In re Application of Hill*, No. M19-117 (RJH), 2007 WL 1226141 (S.D.N.Y. Apr. 23, 2007) ... 19

*In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to
    Take Discovery from Dominique Levy, L&M Galleries*, 249 F.R.D. 96 (S.D.N.Y. 2008)....... 15

*In re Edelman*, 295 F.3d 171 (2d Cir. 2002)................................................................................ 15

*In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M19-88 (BSJ), 2006 WL 3844464
(S.D.N.Y. Dec. 29, 2006) ......................................................................................................... 19

*In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112 (E.D. Wis. 2004) ................................... 19

*In re Qwest Commc'ns Int'l Inc.*, No. 3:08-MC-93, 2008 WL 2741111
(W.D.N.C. July 10, 2008) ......................................................................................................... 19

*In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269 (S.D.N.Y. 2004) ............ 16

*In re Veiga*, 746 F. Supp. 2d 8 (D.D.C. 2010) ......................................................................... 15

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ...................................... 16, 17

*Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-cv-269 (LEK/RFT), 2008 WL 3884374
(N.D.N.Y. Aug. 18, 2008)......................................................................................................... 20

**Statutes**

28 U.S.C. § 1782...............................................................................................................*passim*

International Mineral Resources B.V. ("IMR") respectfully petitions this Court for an order pursuant to 28 U.S.C. § 1782 authorizing it to take discovery from Scott Horton, a resident of New York, for use in proceedings in the Netherlands captioned *EuroChem Volga-Kaliy LLC v. International Mineral Resources B.V.* with case number C/13/539097, and for use in contemplated future litigation in the Netherlands.

## PRELIMINARY STATEMENT

This application stems from an alarming discovery made by IMR in connection with a USD $1 billion litigation between IMR and EuroChem Volga-Kaliy LLC ("ECVK") pending in the Netherlands (the "Dutch Action"). In support of its litigation positions in the Dutch Action, ECVK cited numerous negative articles about IMR and associated entities. IMR later learned that ECVK had hired a former Soviet military counterintelligence officer named Rinat Akhmetshin who hacked into IMR's computer systems, stole confidential, personal and sensitive information, and disseminated the stolen information to journalists and other third parties as part of a smear campaign against IMR.

To gather more information about this scheme, IMR filed a Section 1782 application in the U.S. District Court for the District of Columbia ("DDC") seeking discovery from Mr. Akhmetshin to support claims in the Dutch Action that ECVK engaged in inequitable litigation conduct. On February 5, 2015, the DDC granted IMR's application, finding that it met all of the Section 1782 requirements. Pursuant to the DDC's order, IMR subpoenaed documents and took deposition testimony from Mr. Akhmetshin, which corroborated the fact that Mr. Akhmetshin was involved in the hacking and an associated smear campaign against IMR.

Discovery produced in the DDC action also revealed that Scott Horton had knowledge of the scheme and possessed documents relating to the scheme. Specifically, the discovery demonstrated

that Mr. Akhmetshin and Mr. Horton had known each other for years, that they frequently exchanged information, and that Mr. Akhmetshin discussed his work for ECVK with Mr. Horton. In addition, evidence IMR collected during its investigation of Mr. Akhmetshin's conduct indicates that Mr. Horton himself had access to at least some of the documents that were stolen from IMR. In particular, IMR's investigators recovered a thumb-drive containing (apparently stolen) IMR documents, and the metadata on the thumb drive indicated that someone with the username "Scott Horton" had accessed several files. IMR, therefore, seeks to obtain evidence from Mr. Horton to further support inequitable conduct claims against ECVK in the Dutch Action. In addition, IMR seeks evidence to support new litigation it is contemplating against ECVK in the Netherlands for the unlawful hacking of IMR's computer systems and subsequent dissemination of the hacked material to IMR's detriment in the Dutch Action.

For the reasons set forth below, and for the same reasons the DDC granted IMR's Section 1782 application seeking discovery from Mr. Akhmetshin, this Section 1782 application should be granted. *First*, it meets the statutory requirements for a Section 1782 application because Mr. Horton is "found" in this district and the discovery sought is "for use" in foreign proceedings in which IMR is an "interested person." *Second*, the discretionary factors that this Court should consider in determining whether to grant an application under the United States Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.* all favor granting the Section 1782 application.

Accordingly, IMR respectfully requests that the Court grant it permission to take discovery from Mr. Horton. Further, because the Dutch court is likely to set a hearing date later this year or early next year, and any additional filings should be made well in advance of the

hearing, IMR respectfully requests that Mr. Horton be ordered to provide the requested discovery as soon as is practicable.

**FACTUAL BACKGROUND**

## I.    SCOTT HORTON

Scott Horton is a New York journalist, lecturer, and lawyer.  Mr. Horton identifies himself as a Contributing Editor for Harper's Magazine in the "Greater New York City Area." (*See* Declaration of Jonathan D. Cogan ("Cogan Decl.") Ex. B (Scott Horton LinkedIn Profile).) Mr. Horton regularly authors articles for that publication.  (*See* Cogan Decl. Ex. C (Harper's Magazine, Scott Horton Author Page (listing articles), *available at* http://harpers.org/author/scotthorton/).)   In addition, Mr. Horton is a Lecturer in Law at Columbia Law School, a Visiting Professor of Law at Hofstra University, and an active member of the New York City Bar Association.[1]  (*See* Cogan Decl. Ex. B (Scott Horton LinkedIn Profile); *id.* Ex. D (New York City Bar, Scott Horton Member Profile).)  Public records indicate that Mr. Horton's current address is:  230 East 71st Street, New York, NY 10021-5139.  (Cogan Decl. Ex. E.)

## II.    IMR, SHAFT SINKERS AND ECVK, AND THE VARIOUS FOREIGN LEGAL PROCEEDINGS BETWEEN THEM

IMR is a private limited liability company organized under the laws of the Netherlands that regularly invests in the mining and metal industries.  (Declaration of Tadeusz Jarmolkiewicz ("Jarmolkiewicz Decl.") ¶ 4, *In re Application of International Mineral Resources B.V. For An Order To Take Discovery Pursuant to 28 U.S.C. § 1782* ("*In re IMR*"), No. 14-00340 (D.D.C. May

---

[1] To the best of IMR's knowledge, Mr. Horton is not counsel to Mr. Akhmetshin or ECVK.

18, 2015), ECF No. 27-7 (Cogan Decl. Ex. F).)[2] IMR holds a 48% interest in the publicly traded parent of a mining company called Shaft Sinkers (Proprietary) Limited ("Shaft Sinkers"). (*See id.* ¶ 5.) ECVK is a wholly-owned subsidiary of EuroChem, which claims to be Russia's largest producer of mineral fertilizers. (*Id.* ¶ 8-9.)

From 2007 to 2011, ECVK engaged Shaft Sinkers to work on a mining project in Russia. (*Id.* ¶ 9.) In 2012, the business relationship broke down, and ECVK filed two arbitration proceedings against Shaft Sinkers, seeking more than USD $1 billion in damages for misconduct that allegedly took place in connection with the mining project. (Declaration of Robbert de Bree ("De Bree Decl.") ¶ 4.) In addition, on March 25, 2013, ECVK commenced the Dutch Action against IMR, claiming that IMR should be held liable for Shaft Sinkers's actions. (*Id.* ¶ 5 & Ex. A ¶¶ 5.1, 8.9.) On June 25, 2014, the Dutch court rejected ECVK's theories of liability, found that ECVK's factual assertions were unsubstantiated, and entered a judgment in favor of IMR. (De Bree Decl. ¶ 6 & Ex. B ¶¶ 4.20, 5.)

ECVK filed a formal notice of appeal on September 18, 2014 (the "Dutch Appeal"), and filed its primary appellate submission on March 17, 2015. (De Bree Decl. ¶ 7.) IMR filed its primary defense submission for the appeal on June 23, 2015, and the Dutch Court of Appeal is likely to set a hearing date for the appeal later this year or early next year. (*Id.* ¶ 8.) Unlike in the United States, every Dutch District Court decision is reviewed *de novo* by the Dutch Court of Appeal, and new evidence and witness statements may be presented. (*Id.* ¶ 9.) Any new material presented during an appeal should be filed well in advance of the hearing date, if possible. (*Id.*)

---

[2] Publicly-available filings on the D.D.C. docket are referenced throughout as "D.D.C. ECF No. __."

### III. IMR LEARNS THAT ITS COMPUTERS HAVE BEEN HACKED AND THAT IT IS THE VICTIM OF A SMEAR CAMPAIGN BEING WAGED BY RINAT AKHMETSHIN

In early 2013, IMR personnel began to suspect that their computer systems had been hacked, so the company initiated an investigation. (Jarmolkiewicz Decl. ¶ 10, D.D.C. ECF No. 27-7.) During the course of its investigation, IMR's investigators received reports that a former Soviet military counterintelligence officer named Rinat Akhmetshin had distributed documents to third parties that he claimed had been obtained by hacking IMR's computer systems. (*See* Declaration of Akis Phanartzis ("Phanartzis Decl.") ¶¶ 4, 12-22, *In re IMR*, No. 14-00340 (D.D.C. May 18, 2015), ECF No. 27-5 (Cogan Decl. Ex. G)); Declaration of Raphael Rahav ("Rahav Decl.") ¶¶ 4-10, *In re IMR*, No. 14-00340 (D.D.C. May 18, 2015), ECF No. 27-6 (Cogan Decl. Ex. H).)

IMR's investigators subsequently sought to obtain corroboration that Mr. Akhmetshin had been involved in the hacking, and ultimately obtained two pieces of strong corroboration: (1) after the investigators asked their sources to provide them with evidence of Mr. Akhmetshin's hacking, an anonymous source provided them with a thumb drive containing stolen IMR documents; and (2) an IMR investigator personally witnessed and overheard a conversation at a London coffee shop during which Mr. Akhmetshin handed over to a third-party an external hard drive which he described as containing files obtained through the hacking of IMR computers. (Rahav Decl. ¶¶ 5-10, D.D.C. ECF No. 27-6; Jarmolkiewicz Decl. ¶¶ 11-15, D.D.C. ECF No. 27-7; Phanartzis Decl. ¶¶ 4-19, D.D.C. ECF No. 27-5.)

#### i. *The Thumb Drive*

After receiving reports that Mr. Akhmetshin was distributing stolen IMR materials, IMR's investigators reached out to a number of individuals who they thought might have access

to the stolen information to see if these individuals could provide them with proof of Mr. Akhmetshin's involvement. (Rahav Decl. ¶ 5, D.D.C. ECF No. 27-6.) Understanding that sources are often nervous about turning over this type of sensitive information, the IMR investigators gave their sources locations where they could drop off the hacked information anonymously. (*Id.* ¶ 6.)

On December 8, 2013, one of IMR's investigators was staying at the Radisson Edwardian Berkshire Hotel in London and received a message from the concierge to pick up an envelope in the lobby of the hotel. (*Id.* ¶ 7.) The investigator picked up the envelope from the concierge and discovered that it contained a thumb drive. (*Id.*) Suspecting that the thumb drive contained the materials stolen by Mr. Akhmetshin, the investigator did not try to access the data on the thumb drive. (*Id.* ¶¶ 8-9.) A copy of the thumb drive was subsequently made and provided to IMR for review. (*Id.* ¶ 10; Jarmolkiewicz Decl. ¶ 11, D.D.C. ECF No. 27-7.)

IMR's review of the thumb drive confirmed that it contained confidential IMR documents. (Jarmolkiewicz Decl. ¶¶ 11-15, D.D.C. ECF No. 27-7.) Indeed, the thumb drive contained more than 28,000 individual files. (*Id.* ¶ 11.) These files included confidential and highly sensitive personal and commercial information, including passport information, emails, and personal contact lists for executives within IMR and associated entities; IMR bank account information, loan agreements, strategy documents, and board meeting minutes; emails and wire transfers related to Shaft Sinkers's employees and subsidiaries; and highly confidential internal documents from Eurasian Natural Resources Corporation PLC ("ENRC").[3] (*Id.* ¶ 12.) In addition, the files were extracted from the computer servers of multiple individuals and from

---

[3] The same shareholders who ultimately own IMR are former owners of ENRC. (Jarmolkiewicz Decl. ¶ 7, D.D.C. ECF No. 27-7.)

different companies, leading IMR to believe that they could only have been obtained by way of hacking.  (*Id.* ¶¶ 14-15.)

A subsequent forensic review of the metadata on the thumb drive revealed that certain files on the drive were last accessed by two users:  (1) someone with the username "Scott Horton," and (2) someone with the username "RA" (the same initials as "Rinat Akhmetshin") (Declaration of Melanie Maugeri ("Maugeri Decl.") ¶¶ 4-9, *In re IMR*, No. 14-00340 (D.D.C. May 18, 2015), ECF No. 27-13 (Cogan Decl. Ex. I).)

ii.  *The Coffee Shop Conversation*

In mid-January 2014, another IMR investigator received information that Mr. Akhmetshin would be traveling to London later that month.  (Phanartzis Decl. ¶ 5, D.D.C. ECF No. 27-5.)  On January 29, 2014, this investigator located Mr. Akhmetshin at Le Meridien Piccadilly.  (*Id.* ¶ 6.)

The next morning, on January 30, 2014, at approximately 11:15 a.m., the IMR investigator observed Mr. Akhmetshin entering the Café Royal Coffee Shop on Regent Street, so the investigator took a seat nearby.  (*Id.* ¶¶ 10-11.)  At approximately 11:25 a.m., Mr. Akhmetshin was joined by a businessman in his forties who was carrying a laptop.  (*Id.* ¶ 12.) After they had exchanged pleasantries, Mr. Akhmetshin handed the businessman an external hard drive and stated that it contained internal documents and emails from IMR.  (*Id.* ¶ 13.)  Mr. Akhmetshin explained that ECVK was in a legal dispute with IMR over a Russian mining project, and that ECVK had hired him in connection with that dispute.  (*Id.* ¶ 14, 19-21.)  Mr. Akhmetshin stated that he had organized the hacking of IMR's computer systems on ECVK's behalf.  (*Id.* ¶ 14.)  Mr. Akhmetshin further stated that he used a group of Russians to do the actual hacking, noting that "I had to pay a lot of money to get this stuff."  (*Id.*)

Mr. Akhmetshin stated that his team had collected materials from IMR senior executives, such as the CEO of IMR, and from individuals in key administrative positions whose computers would contain important internal documents. (*Id.* ¶¶ 14-15.) Mr. Akhmetshin said that his team had collected approximately 50 gigabytes worth of material, although he noted that some of the less sensitive materials were stored at his home. (*Id.* ¶ 16.) The businessman commented on the volume of material, and Mr. Akhmetshin responded, "there is a lot of the stuff, so — but that's why you are paying money." (*Id.* ¶ 17.)

Mr. Akhmetshin stated that ECVK hired him because of his expertise in disputes that require sensitive work. (*Id.* ¶ 19.) He noted that he was in contact with ECVK's "head of security," who he described as "a former KGB agent." (*Id.* ¶ 18.) He also said that he met with lawyers for ECVK in New York, and identified one of these lawyers as Patrick Salisbury of Salisbury & Ryan LLP. (*Id.* ¶ 20.) Mr. Akhmetshin added that he was hired because there were certain things that the law firm could not do. (*Id.* ¶ 21.) Mr. Akhmetshin noted that he had a meeting with Mr. Salisbury the following week in New York to discuss next steps for the case against IMR. (*Id.* ¶ 22.)

## IV. SECTION 1782 DISCOVERY TAKEN FROM MR. AKHMETSHIN FURTHER INDICATES THAT MR. AKHMETSHIN WAS RESPONSIBLE FOR THE HACKING AND REVEALS MR. HORTON'S KNOWLEDGE OF THE SCHEME

On April 3, 2014, IMR filed a Section 1782 application in the DDC seeking discovery from Mr. Akhmetshin regarding the hacking. (*See* Cogan Decl. Ex. J (IMR 1782 Application, *In re IMR*, (D.D.C. Apr. 3, 2014).) On September 23, 2014, after the Dutch court ruled in favor of IMR in the Dutch Action, the DDC denied IMR's Application without prejudice, stating that:

> The Court understands that IMR, as well as ECVK, will have an opportunity to submit additional evidence at the appellate level. However, we certainly do not

know whether either party will take advantage of that opportunity. Therefore, this
Court concludes that it is now premature to grant the pending Application . . . .

(Memorandum Order ("Initial Order") at 2, *In re IMR*, No. 14-00340 (D.D.C. Sep. 23, 2014),

ECF No. 17 (Cogan Decl. Ex. K).) After ECVK filed a formal notice of appeal in the Dutch

Action, IMR renewed its application, and the court granted the application on February 5, 2015.

(*See* Memorandum of Law in Support of IMR's Motion to Renew ("Motion to Renew"), *In re*

*IMR*, No. 14-00340 (D.D.C. Oct. 30, 2014), ECF No. 18 (Cogan Decl. Ex. L); Memorandum

Order ("Order Granting Application"), *In re IMR*, No. 14-00340 (D.D.C. Feb. 5, 2015), ECF No.

22 (Cogan Decl. Ex. M).) In granting IMR's Section 1782 application, the DDC held that:

> [IMR] has satisfied the requirements of § 1782. . . . There is simply no dispute
> that Mr. Akhmetshin lives within the District of Columbia; there is simply no
> dispute that the deposition requested is to be used in the appeal of the Dutch
> Action, which is a proceeding before a foreign tribunal; there is simply no dispute
> that [IMR] is a litigant in that Dutch Action and, therefore, is an 'interested
> person.'

(*See* Order Granting Application at 1, D.D.C. ECF No. 22.) Pursuant to the DDC's order, IMR

took discovery from Mr. Akhmetshin and deposed him on April 7, 2015.

The information that IMR received corroborated IMR's evidence demonstrating that Mr.

Akhmetshin was responsible for the hacking and smear campaign. Specifically:

- Mr. Akhmetshin confirmed that he had a history of running "strategic communications" campaigns where he conducted "media and legislative outreach," "encourage[d] journalists to look into [his] client matters," and developed close relationships with reporters in Washington, D.C. and elsewhere (Motion to Compel Ex. H ("Akhmetshin Dep. Transcript") at 149:5-151:12, *In re IMR*, No. 14-00340 (D.D.C. May 18, 2015), ECF No. 27-9 (Cogan Decl. Ex. N));

- ECVK's counsel, Mr. Salisbury, admitted in a court filing that he retained Mr. Akhmetshin in connection with the ECVK proceedings, and that he "understood that Mr. Akhmetshin had a number of private sources of information concerning IMR" (Declaration of Patrick P. Salisbury ("Salisbury Decl.") ¶¶ 64, 53, 60, *In re IMR*, No. 14-00340 (D.D.C. June 18, 2015), ECF No. 39-4 (Cogan Decl. Ex. O)); Affidavit of Rinat Akhmetshin ("Akhmetshin Aff.") Ex. A, *In re IMR*, No. 14-00340 (D.D.C. May 15, 2014), ECF No. 10-1 (Cogan Decl. Ex. P));

- According to Mr. Akhmetshin, after he was engaged by ECVK's lawyers, "[t]hey were very clear about describing what my tasks will be, and also they instructed me on the sensitivity of this issue" (Akhmetshin Dep. Transcript at 36:14-29, D.D.C. ECF No. 27-9);

- Mr. Akhmetshin stated that he went "trolling" for information on ECVK's behalf in the "London Information Bazaar" (Akhmetshin's Opposition to Motion to Compel ("Akhmetshin MTC Opp.") at 6, *In re IMR*, No. 14-00340 (D.D.C. June 18, 2015), ECF No. 38 (Cogan Decl. Ex. Q)), an informal grey market where people barter for information (*see* IMR's Reply re: Motion to Compel Ex. A at 263:12, *In re IMR*, No. 14-00340 (D.D.C. June 25, 2015), ECF No. 43-1 (Cogan Decl. Ex. R));

- Mr. Akhmetshin admitted that he "receiv[ed] information . . . of unknown origin or substance" on ECVK's behalf (Akhmetshin MTC Opp. at 6, D.D.C. ECF No. 38);

- Mr. Akhmetshin admitted that he was in the Café Royal Coffee Shop on Regent Street on January 30, 2014, at approximately 11:15 a.m. meeting with a client, and further admitted that he provided his client with a hard drive containing documents related to IMR and/or the shareholders who ultimately own IMR: Alexander Machkevich, Patokh Chodiev, and Alijan Ibragimov (who are sometimes referred to as the "Trio") (*see* Akhmetshin Dep. Transcript at 189-90, 195-96, 198, D.D.C. ECF No. 27-9; Jarmolkiewicz Decl. ¶ 7, D.D.C. ECF No. 27-7);

- ECVK's counsel admitted that he authorized Mr. Akhmetshin to leak IMR-related information to journalists (*see* Salisbury Decl. ¶ 67, D.D.C. ECF No. 39-4; ECVK's Opposition to Motion to Compel ("ECVK MTC Opp.") at 10, *In re IMR*, No. 14-00340 (D.D.C. June 18, 2015), ECF No. 39 (Cogan Decl. Ex. S));

- The information IMR received demonstrates that Mr. Akhmetshin, in fact, shared information related to IMR with numerous journalists (*see* IMR's Memorandum in Support of Motion to Compel ("IMR MTC") at 10-11 & n. 2, *In re IMR*, No. 14-00340 (D.D.C. May 18, 2015), ECF No. 27-1 (Cogan Decl. Ex. T); Akhmetshin Dep. Transcript at 166-184, 224-226, 229-230, 245-247, D.D.C. ECF No. 27-9);

- One journalist to whom Mr. Akhmetshin apparently provided IMR-related documents went on to write a negative news article about an entity associated with IMR. Notably, that article was later cited by ECVK in the Dutch Action in support of a successful application to freeze approximately €886,000,000 — or USD $1.2 billion — of IMR's assets (*see* Akhmetshin Dep. Transcript at 179-184, D.D.C. ECF No. 27-9; Motion to Compel Exhibit S ("Guardian Article from HITC Business"), *In re IMR*, No. 14-00340 (D.D.C. May 18, 2014), ECF No. 27-20 (Cogan Decl. Ex. U));

- In another e-mail communication, that same journalist asked Mr. Akhmetshin whether he had any "Herbert Smith e-mails." Herbert Smith is a law firm that represented a

company associated with IMR (*see* Akhmetshin Dep. Transcript at 179-184, D.D.C. ECF No. 27-9). Mr. Akhmetshin was thus approached by someone seeking internal, confidential, IMR-related documents, presumably on the belief that Mr. Akhmetshin was in possession of them.[4]

In addition to confirming that Mr. Akhmetshin was responsible for the hacking, the information obtained from Mr. Akhmetshin revealed that Mr. Horton had knowledge of the scheme and possessed information related to the scheme. Specifically:

- At his deposition, Mr. Akhmetshin testified that he has "known Mr. Horton for years," and that he "often" "compare[s] notes" with Mr. Horton (*id.* at 176:24-177:3);

- Mr. Akhmetshin testified that he communicated with Mr. Horton about his work for ECVK (*id.* at 164:25-165:20);

- Information obtained from Mr. Akhmetshin indicates that Mr. Akhmetshin and Mr. Horton exchanged multiple communications concerning IMR and/or associated entities (*id.* at 166-179);

- For example, Mr. Akhmetshin and Mr. Horton had an email exchange in which Mr. Horton appears to be providing IMR-related search terms for Mr. Akhmetshin to use to look for information, presumably in the set of documents Mr. Akhmetshin obtained through the unlawful hacking of IMR's computer system (*id.* at 166:4-171:5);

- In another email exchange, Mr. Horton appears to reference documents sent by Mr. Akhmetshin, and indicates that one of the items that Mr. Akhmetshin sent matches the information that Mr. Horton had previously collected (*id.* at 171:6-173:6); and

- Mr. Akhmetshin's privilege log indicates that Mr. Akhmetshin and Mr. Horton exchanged numerous other emails and attachments related to Mr. Akhmetshin's work for ECVK (Motion to Compel Ex. A ("Redline of Priv. Log") Entries 247, 249, 251-53, *In re IMR*, No. 14-00340 (D.D.C. May 18, 2015), ECF No. 27-2 (Cogan Decl. Ex. V).)

---

[4] IMR notes that it gathered additional, compelling information in the DDC proceeding corroborating the fact that Mr. Akhmetshin was responsible for the hacking and smear campaign. However, Mr. Akhmetshin filed a motion for a protective order seeking to shield that information from disclosure, and that motion is currently pending before the DDC. IMR does not believe Mr. Akhmetshin is entitled to a protective order, nor does it believe that any of Mr. Akhmetshin's materials are entitled to confidentiality. However, in an abundance of caution, IMR has limited its use of materials gathered in the DDC proceeding to materials that have been filed on the public docket.

As evidenced by the information discussed above, IMR was able to gather important details about the hacking through the Section 1782 application seeking discovery from Mr. Akhmetshin. IMR has incorporated materials gathered through that Section 1782 application into its defense submission in the Dutch Appeal. (De Bree Decl. ¶ 8.) However, Mr. Akhmetshin's response to the application made clear that there were significant portions of relevant information that were no longer in his possession. For example, Mr. Akhmetshin asserted that he saved a significant number of the documents relating to his work for ECVK on a laptop that he claims was later stolen. (*See* Akhmetshin Aff. ¶ 9, Ex. B, D.D.C. ECF No. 10-1.) Mr. Akhmetshin also routinely disposes of emails and other work product related to his engagements as a matter of practice. *See* Declaration of Rinat Akhmetshin ¶ 4, *Egiazaryan v. Zalmayev* ("*Egiazaryan*"), No. 11-2670 (S.D.N.Y. Aug. 22, 2012), ECF No. 177 (Cogan Decl. Ex. W) ("[A] considerable percentage of the emails I write or read in my profession touch on confidential, proprietary, and even more sensitive information. That is one reason I delete them as a matter of routine practice"). Because the materials gathered from Mr. Akhmetshin suggest that Mr. Horton has information relating to the scheme, and IMR was not able to obtain all of the relevant materials from Mr. Akhmetshin directly, IMR seeks to take discovery from Mr. Horton.

## V. IMR SEEKS DISCOVERY FOR USE IN THE DUTCH APPEAL AND A CONTEMPLATED ACTION IN THE NETHERLANDS

IMR seeks discovery from Mr. Horton in aid of claims for inequitable conduct against ECVK in the Dutch Appeal and in aid of contemplated future litigation in the Netherlands.

Litigants in the Netherlands owe a duty of "full and frank disclosure." (De Bree Decl. ¶ 10.) Parties to Dutch litigation also must comport themselves in a fair and equitable manner in connection with the conduct of the litigation (the rule of "fair play"). (*Id.*) Dutch courts have broad discretion to remedy violations of the duties of full and frank disclosure and of fair play, including by dismissing

entire claims in extreme cases of misconduct. (*Id.*) IMR seeks discovery from Mr. Horton to support this position. (*Id.* ¶ 11.) As noted above, on appeal, the Dutch courts permit litigants to submit new evidence (*i.e.*, evidence not considered by the court below). (*Id.* ¶ 9.) However, if possible, any new evidence should be submitted well in advance of the appellate hearing, which is likely to be scheduled for later this year or early next year. (*Id.*) Accordingly, IMR respectfully requests that Mr. Horton be ordered to provide the requested discovery as soon as is practicable so that IMR will have the opportunity to incorporate the evidence into its defense.

IMR is also contemplating the initiation of a new action against ECVK in the Netherlands based on ECVK's unlawful hacking of IMR's computer systems (the "Contemplated Dutch Proceedings"). (*Id.* ¶ 12.) Under Dutch law, the requirements for such an action are (i) that an unlawful act was committed,[5] (ii) which is attributable to the person who has committed it, (iii) whereby the subject of the act has suffered loss (which loss therefore must have a causal link with the act). (*Id.* ¶ 13.) In the Contemplated Dutch Proceedings, IMR would seek damages on the ground that ECVK unlawfully hacked into IMR's computer systems in breach of IMR's privacy rights, and disseminated the hacked information to the detriment of IMR in the Dutch Action. (*Id.* ¶ 14.)

---

[5] An unlawful act can come in many factual shapes and forms, but must consist of a breach of a right or acting in breach of a legal duty or contrary to the public order and/or public morality, or acting in breach of a duty imposed by an unwritten rule of law in relation to proper social conduct. (De Bree Decl. ¶ 13.)

<u>**ARGUMENT**</u>

The Court should issue an order granting IMR's application for discovery because (i) IMR meets the statutory prerequisites for relief under 28 U.S.C. § 1782, and (ii) the factors to be weighed by the Court in exercising its discretion under the statute heavily favor granting IMR's application.

**I.      IMR'S APPLICATION SATISFIES THE THREE STATUTORY REQUIREMENTS OF 28 U.S.C. § 1782**

Section 1782 of Title 28 of the United States Code, entitled "Assistance to foreign and international tribunals and to litigants before such tribunals," authorizes federal district courts to order discovery to assist applicants, such as IMR, in obtaining evidence in the United States for use in foreign legal proceedings.[6]  "[T]he statute has, over the years, been given increasingly broad applicability."  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citations and quotations omitted).  To obtain discovery under Section 1782, an applicant must satisfy three statutory requirements:  (i) the person from whom discovery is sought must reside or be found within the district; (ii) the discovery must be for use in a proceeding before a foreign or international tribunal; and (iii) the application must be made by an interested person. 28 U.S.C. § 1782(a); *see also Brandi-Dohrn*, 673 F.3d at 80.

The DDC granted IMR's application seeking discovery from Mr. Akhmetshin after finding that IMR had satisfied all three of the Section 1782 statutory requirements.  (Order Granting

---

[6]  28 U.S.C. § 1782(a) provides, in relevant part:  "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . .  The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court."

Application ¶ 1, D.D.C. ECF No. 22 ("Applicant has satisfied the requirements of § 1782.")) IMR's application seeking discovery from Mr. Horton should be granted for the same reasons.

*First,* the party from whom discovery is sought, Mr. Horton, is present within the Southern District of New York. Mr. Horton is a New York journalist, lecturer, and lawyer, and public records indicate that Mr. Horton's current address is: 230 East 71st Street, New York, NY 10021-5139. (Cogan Decl. Ex. E). Accordingly, Mr. Horton is found within the district. 28 U.S.C. § 1782(a); *see also In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) (respondent is "found" if physically present in the district).

*Second*, the documents and deposition testimony requested are "for use" in the Dutch Appeal and the Contemplated Dutch Proceedings. The "for use" requirement imposes a *de minimis* burden on the applicant to show that the requested discovery has some relevance to the foreign proceeding. *See In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L&M Galleries* ("*In re Application of Sveaas*"), 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (the standard for relevance is "broadly permissive"); *see also In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) ("the burden imposed upon an applicant is *de minimis*"). Relevance is "broadly construed to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *In re Application of Sveaas*, 249 F.R.D. at 106-07 (internal quotations omitted). "Where relevance is in doubt, the district court should be permissive." *Id.* at 107 (citing *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003)). District courts should not attempt to determine whether the evidence would actually, or even probably, be discoverable or admissible in the foreign proceeding. *Brandi-Dohrn v. IKB*

*Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (noting unanimity among the Circuits that have ruled on the issue).

Moreover, "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004). Instead, the Supreme Court has held that Section 1782(a) requires only that a proceeding "be within reasonable contemplation." *Id.* at 259; *see also In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) ("Section 1782 may be invoked even where foreign legal proceedings are not even underway").

Here, the requested discovery will allow IMR to add evidentiary support to its defense submission in the Dutch Appeal. (*See* De Bree Decl. ¶¶ 8-11); *see also* Order Granting Application ¶ 1, D.D.C. ECF No. 22 ("Applicant has demonstrated that . . . (ii) the discovery is for use in a proceeding before a foreign or international tribunal . . . [as] there is simply no dispute that the deposition requested is to be used in the appeal of the Dutch Action, which is a proceeding before a foreign tribunal"). IMR specifically seeks discovery from Mr. Horton relating to the hacking and smear campaign because it is relevant to whether ECVK engaged in inequitable conduct. (De Bree Decl. ¶ 11.) Further, discovery will allow IMR to gather additional evidence in support of a potential new action against ECVK in the Dutch courts for arranging the unlawful hacking of IMR's computer systems and the subsequent smear campaign against IMR. (*See Id.* ¶¶ 12-13.)[7]

*Third*, as the appellee in the Dutch Appeal and the potential plaintiff in the Contemplated Dutch Proceedings, IMR qualifies as an "interested person" under Section

---

[7] Courts have found that an order of discovery is appropriate for a contemplated proceeding where, as here, the applicant has conducted a detailed investigation before filing the application. *See Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, No. 11-12897, 2014 WL 104132, at *6 (11th Cir. Jan. 10, 2014) (discovery granted for contemplated proceeding where Section 1782 applicant first conducted "an extensive internal audit" and provided a "detailed explanation of its intent to pursue civil" litigation).

1782. *See* Order Granting Application ¶ 1, D.D.C. ECF No. 22 ("Applicant has demonstrated

that . . . (iii) the application is made by an interested person . . . [as] there is simply no dispute

that Applicant is a litigant in that Dutch Action and, therefore, is an 'interested person'"); *see*

*also Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (a party to the underlying foreign

proceedings "is an 'interested person' within the meaning of the statute"); *see also In re*

*Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79

(2d Cir. 1997) (as a party to the foreign proceeding, the applicant qualifies as an interested

person).

## II. THE COURT SHOULD GRANT IMR'S SECTION 1782 PETITION UNDER THE FOUR DISCRETIONARY FACTORS IN *INTEL*

Once the statutory requirements are met, as they are here, courts consider four

discretionary factors that were articulated by the Supreme Court in *Intel*:  (i) whether "the

person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the

nature of the foreign tribunal, the character of the proceedings underway abroad, and the

receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial

assistance"; (iii) whether the application "conceals an attempt to circumvent foreign proof-

gathering restrictions or other policies"; and (iv) whether the discovery sought is unduly

intrusive or burdensome.  542 U.S. at 264-65.  In considering these factors, courts exercise their

discretion liberally in favor of granting discovery.  *See Brandi-Dohrn*, 673 F.3d at 80.  In this

case, all four factors favor allowing discovery.

### A. Mr. Horton Is Not a Participant in the Dutch Action

Under *Intel*, this factor favors the applicant where the respondent is not a party in the

foreign proceeding.  *See Intel*, 542 U.S. at 264 ("[N]onparticipants in the foreign proceeding may

be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the

United States, may be unobtainable absent § 1782(a) aid."); *see also In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 292 (S.D.N.Y. 2010) (holding that this factor weighed in favor of granting discovery where the respondent was "not a party to any of the foreign proceedings"). In this case, Mr. Horton is not a party to the Dutch Action, so this factor favors granting IMR's application.

B.    **The Dutch Court Would Be Receptive to the Requested Discovery, and the Character of the Dutch Proceedings Favors Granting the Application**

The Second Circuit has made clear that, in examining the second *Intel* factor, "a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would ***reject*** evidence obtained with the aid of section 1782." *Euromepa*, 51 F.3d at 1100 (emphasis added). Authoritative proof is limited to proof "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures[.]" *Id.*

As noted above, every Dutch District Court decision is reviewed *de novo* by the Dutch Court of Appeal, and new evidence and witness statements may be presented. (De Bree Decl. ¶ 9); *see also* Initial Order at 2, D.D.C. ECF No. 17 ("The Court understands that IMR, as well as ECVK, will have an opportunity to submit additional evidence at the appellate level"). In this case, IMR has already submitted materials gathered pursuant to Section 1782 to the Dutch Court of Appeal, demonstrating that the foreign tribunal will not reject the evidence sought. (De Bree Decl. ¶ 8.)

The Dutch Court of Appeal's acceptance of 1782 material is consistent with the practice of other Dutch courts, which have expressed their willingness to admit evidence obtained through the Section 1782 discovery process. (*Id.* ¶ 15.) For example, in *Convex cs. v. Duizendstraal cs.*, the Dutch District Court held that parties to Dutch proceedings are free to use

an "informal judicial method," such as Section 1782, to gather evidence. (*Id.*); *Convex cs. v. Duizendstraal cs.*, President District Court Utrecht, 9 April 1996, KG 1996/158. The decision of the Utrecht District Court was subsequently upheld by the Amsterdam Court of Appeals (*Hof*). (De Bree Decl. ¶ 15); *Convex cs. v. Duizendstraal cs.*, Court of Appeals (*Hof*) Amsterdam, 24 October 1996, NIPR 1997/120. Likewise, in *Alfred Mol v. Kinetics Technology International B.V.*, the Dutch Supreme Court (*Hoge Raad*) held that evidence obtained via Section 1782 may be used in proceedings before the national courts. (De Bree Decl. ¶ 16); *Alfred Mol v. Kinetics Technology International B.V.*, Supreme Court (*Hoge Raad*), 6 February 1998, NJ 1999, 479.[8] This factor therefore strongly favors granting the application.

### C.    IMR Is Not Circumventing Any Dutch Proof-Gathering Restrictions

Courts typically weigh the third *Intel* factor against the applicant only where they find that an application is brought in bad faith. *See In re Application of Hill*, No. M19-117 (RJH), 2007 WL 1226141, at *3 (S.D.N.Y. Apr. 23, 2007) ("Absent any indication of bad faith on [the applicant's] part, the Court is simply unwilling to weigh the request for § 1782 assistance itself as a negative discretionary factor") (internal quotations omitted); *see also In re Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M19-88 (BSJ), 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006). In this case, IMR has already submitted evidence gathered pursuant to Section 1782 in the Dutch Appeal, which demonstrates that IMR is seeking discovery in good

---

[8]  U.S. courts have likewise routinely granted Section 1782 applications seeking discovery for use in Dutch courts. *See, e.g.*, Order Granting Application, D.D.C. ECF No. 22; *In re Qwest Commc'ns Int'l Inc.*, No. 3:08-MC-93, 2008 WL 2741111, at *6 (W.D.N.C. July 10, 2008) (approving discovery under Section 1782 for use in the Amsterdam District Court); *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1118 (E.D. Wis. 2004) (granting discovery pursuant to Section 1782 for use in proceedings in the United Kingdom, France, the Netherlands, Germany and Japan); *Eco Swiss China Time Ltd. v. Timex Corp.*, 944 F. Supp. 134, 138 (D. Conn. 1996) (granting in part a 1782 application for discovery to be used in a Dutch arbitration and litigation).

faith. Further, the evidence that IMR has obtained to date demonstrates that it has a good faith basis to pursue discovery for use in a contemplated action against ECVK. Accordingly, this factor weighs in favor of granting the application.

### D. IMR's Discovery Requests Are Narrowly Tailored and Are Not "Unduly Intrusive or Burdensome"

The fourth *Intel* factor favors the applicant as long as the requests for discovery are not overly burdensome or duplicative. *See Esses v. Hanania (In re Esses),* 101 F.3d 873, 876 (2d Cir. 1996) (per curiam) (affirming discovery where there was no "indication that the district court's order is overly burdensome or duplicative"); *see also Minatec Fin. S.A.R.L. v. SI Grp. Inc.*, No. 1:08-cv-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008) (no undue burden where the document request was "specifically and narrowly tailored").

In this case, IMR's discovery requests are narrowly tailored to IMR's claims regarding the hacking and smear campaign. Indeed, in an effort to narrowly tailor the discovery being sought, the proposed subpoena seeks production of documents in response to only two document requests (a copy of the subpoena that IMR intends to serve on Mr. Horton is attached as Exhibit A to the Cogan Declaration). Further, the requested discovery implicates a discrete universe of documents and testimony relating to Mr. Horton's knowledge of the scheme against IMR. Thus, the relevant documents and testimony should be easily identifiable, readily accessible, and not burdensome for Mr. Horton to produce. To the extent that IMR's two document requests somehow create burden issues for Mr. Horton, IMR would, of course, meet and confer with him in an effort to resolve them.

## CONCLUSION

Based on the foregoing, IMR respectfully moves the Court to issue an Order:

1. Approving IMR's petition for discovery;

2. Granting issuance of the subpoena as it appears attached as Exhibit A to the Declaration of Jonathan D. Cogan; and

3. Directing Scott Horton to produce the documents in his possession, custody, and control, as requested in the subpoena, by no later than August 19, 2015 12:00 p.m., and to provide the deposition testimony requested in the subpoena on or before September 18, 2015 9:00 a.m.

Dated:    New York, New York
August 4, 2015

Respectfully submitted,

Jonathan D. Cogan
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220
jonathan.cogan@kobrekim.com

*Attorney for Applicant International Mineral Resources B.V.*